Rockingham
No. 90-247

ADKIN PLUMBING & HEATING SUPPLY CO., INC.

v.

TYLER P. HARWELL

April 24, 1992

*Engel & Gearreald, P.A.*, of Exeter (*David C. Engel* on the brief and orally), for the plaintiff.

*Tyler P. Harwell*, by brief and orally, *pro se*.

BROCK, C.J. The plaintiff, Adkin Plumbing & Heating Supply Co., Inc. (Adkin), retained the services of the defendant attorney, Tyler P. Harwell, on a contingent fee basis. Dissatisfied with Harwell as its attorney, Adkin discharged the defendant and subsequently filed a malpractice action. Harwell counterclaimed for breach of contract and wrongful discharge. The Superior Court (*Gray*, J.) granted the plaintiff's motion to dismiss the defendant's counterclaim, which he now appeals. We reverse.

■ Accepting the defendant's version of the facts as true, as we must on an appeal of a motion to dismiss, *Hartman v. Town of Hooksett*, 125 N.H. 34, 35, 480 A.2d 12, 13 (1984), we note the following events took place. In October 1985, Adkin retained Attorney Harwell pursuant to a contingent fee agreement to collect a past due account from Kenneth LeRoy. Harwell performed various legal services for the plaintiff, but never actually collected any money on the debt. In early 1987, Harwell was discharged, without cause, as Adkin's counsel. To date, Adkin has received no money from LeRoy on the past due account.

In a style, mercifully, rarely seen by this court, the defendant has presented the issue of whether an attorney may recover on a contingent fee agreement when he is discharged without cause prior to the disposition of the case and the contingency never occurs. Although the defendant has listed numerous issues in his brief, the majority of which are without merit, we address only those questions necessary to decide this appeal.

The first issue before the court is whether an attorney may sue a client for breach of contract if the client discharges the attorney without cause. The defendant answers affirmatively, apparently relying on language in *Markarian v. Bartis*, 89 N.H. 370, 372, 199 A. 573, 575 (1938), which states that "[c]ontracts for attorneys' services stand on the same ground and are governed by the same rules as other similar contracts for services." While the quotation is accurate, a close reading of the case reveals that it does not support the defendant's proposition that he should be able to recover on the contract.

In *Markarian*, the client and his attorney, Markarian, entered into an agreement in champerty, whereby the attorney would advance the legal expenses for the client and would be reimbursed out of the funds recovered. Markarian was discharged prior to the completion of the case, and, while it is clear that the client benefited from Markarian's services, it is unclear whether the agreed upon contingency actually occurred. Markarian brought suit for services rendered and money expended on the client's behalf. In rendering our decision, we first noted the changing attitude toward contracts in champerty and determined that such contracts no longer constituted a violation of public policy. We concluded that "the agreement as to the plaintiff's compensation for services in the suit for contribution, if made, was not illegal." *Markarian*, 89 N.H. at 375, 199 A. at 577. However, because the focus of the case was on the question of whether contingent

fee agreements were valid, the issue of whether an attorney could recover damages for breach of contract was never examined.

■■ It is well established that an individual may discharge his attorney, either with or without cause, at any time. *Wells v. Hatch*, 43 N.H. 246, 247 (1861); *Fracasse v. Brent*, 6 Cal. 3d 784, 790, 494 P.2d 9, 13, 100 Cal. Rptr. 385, 389 (1972); *Warner v. Basten*, 118 Ill. App. 2d 419, 434–35, 255 N.E.2d 72, 80 (1969); *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985).

> "That the client may at any time for any reason or without any reason discharge his attorney is a firmly established rule which springs from the personal and confidential nature of the relation which such a contract of employment calls into existence. If the client has the right to terminate the relationship of attorney and client at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract."

*Martin v. Camp*, 219 N.Y. 170, 174, 114 N.E. 46, 48 (1916) (citation omitted), *order amended*, 220 N.Y. 653, 115 N.E. 1044 (1917); *see also Fracasse*, 6 Cal. 3d at 791, 494 P.2d at 13, 100 Cal. Rptr. at 389. We agree with this rationale and reemphasize the fact that a client may terminate the relationship with his or her attorney at any time and for any reason. Therefore, the defendant's claim for damages for breach of contract was properly dismissed.

However, our ruling prohibiting a discharged attorney from recovering on the contract does not necessarily mean that the attorney's services will go for naught. The clear majority of states that allow a client to discharge his attorney at any time for any reason, also accept the rule that the attorney, when discharged without cause, may recover the reasonable value of his services in quantum meruit. *Markarian v. Bartis*, 89 N.H. at 375, 199 A. at 577; *Salem Realty Co. v. Matera*, 10 Mass. App. 571, 575–76, 410 N.E.2d 716, 719 (1980), *modified and aff'd*, 384 Mass. 803, 426 N.E.2d 1160 (1981); *Garrett v. Garrett*, 140 Ariz. 564, 567, 683 P.2d 1166, 1169 (1983); *Empro Corp. v. Scottland Hotels, Inc.*, 449 N.W.2d 734, 737 (Minn. App. 1990); *Hopkins v. Steele*, 164 Ga. App. 527, 528, 297 S.E.2d 528, 529 (1982); *Heinzman v. Fine, Fine, Legum & Fine*, 217 Va. 958, 964, 234 S.E.2d 282, 286 (1977). In general, under a claim for quantum meruit, attorneys who are discharged without cause may recover the fair and reasonable value of their services. There is a slight twist to this rule, however, in contingent fee cases. One school of thought allows the

discharged attorney to bring a claim for the value of his services at the time the client terminates the attorney's services, *see, e.g., Martin v. Camp*, 219 N.Y. at 177, 114 N.E. at 49; *Zimmerman v. Kallimopoulou*, 290 N.Y.S.2d 270, 272–73 (N.Y. City Civ. Ct. 1967) ("attorney's right to compensation cannot be made to depend upon the success or failure of another member of the bar"), whereas other courts allow recovery only if the contingency in fact occurs. *See, e.g., Fracasse*, 6 Cal. 3d at 792, 494 P.2d at 14, 100 Cal. Rptr. at 390; *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53, 60 (Mo. 1982); *Rosenberg v. Levin*, 409 So. 2d 1016, 1022 (Fla. 1982).

■■ In the case before us, the trial court granted the plaintiff's motion to dismiss on the grounds that the contingency never occurred; that is, Adkin never collected any money from LeRoy. We believe the better rule is stated in the New York cases, and hold that the cause of action accrues upon the termination of the attorney's services without cause, not upon the happening of the contingency. Therefore, since the defendant has alleged sufficient facts in his counterclaim to indicate that he performed work for the client and was discharged without cause, he has stated a claim upon which relief may be granted. Accordingly, the trial court's order is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

THAYER, J., dissented; the others concurred.

THAYER, J., dissenting: I agree with the majority that an attorney is entitled to recover in quantum meruit for the reasonable value of services rendered, rather than on the contract, because the unique relationship of trust and confidence between the attorney and client dictates that the client be given greater freedom to change legal representation than might be tolerated in other employment relationships. I do not agree, however, that in contingency fee cases the discharged attorney's cause of action accrues at the time the client terminates the relationship. An attorney discharged with or without cause subject to a contingency fee agreement should not be entitled to recovery for the value of services rendered until the occurrence of the contingency. *See Fracasse v. Brent*, 6 Cal. 3d 784, 791–92, 494 P.2d 9, 14–15, 100 Cal. Rptr. 385, 390–91 (1972); *Rosenberg v. Levin*, 409 So. 2d 1016, 1022 (Fla. 1982); *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53, 59–60 (Mo. 1982); *Chambliss, Bahner and Crawford v. Luther*, 531 S.W.2d 108, 113 (Tenn. 1975) (dicta). A determination of the "fair and reasonable" value of the attorney's services is

impossible to ascertain until the time of the ultimate recovery. *See Fracasse*, 6 Cal. 3d at 792, 494 P.2d at 14, 100 Cal. Rptr. at 390.

*Any* amount awarded to the discharged attorney prior to final disposition of the underlying case is unfair to both the attorney and the client. It is unfair to the attorney because a factor in determining the reasonableness of an attorney's fee is the result obtained. *See id.* That is, the fair and reasonable value of the attorney's services could be in excess of that which is awarded when the result is not considered. On the other hand, it would be unfair to the client if the fair and reasonable value of the attorney's services at the time of discharge amounts to more than that which would have been awarded had the ultimate recovery been known, a result that could be devastating to the client and a windfall to the attorney.

In addition, providing an immediate cause of action to the discharged attorney is unfair to the client because the client enters into a contingency fee agreement with the expectation that the attorney's compensation, if paid at all, will be a percentage of the recovery. The majority fails to recognize that a contingency fee agreement is often the only way a client who is unable to pay attorney's fees can obtain legal recourse. *Id.* The client should not be burdened with an absolute obligation to pay the discharged attorney regardless of the outcome of the litigation simply because the unique relationship of trust and confidence between the client and attorney has broken down and the client feels the need to exercise his or her right to obtain new counsel. *See Plaza Shoe*, 636 S.W.2d at 58. In addition, the majority's holding could allow a discharged attorney to receive more compensation than was bargained for under the terms of the contingency fee contract. This is possible when the reasonable value of the attorney's services exceeds the attorney's agreed percentage of the recovery, *see Chambliss*, 531 S.W.2d at 113, which could result when the discharged attorney's services were extensive in the area of damages and the successor attorney finds upon examination that legal liability cannot be established.

Furthermore, while the majority recognizes that all clients have the absolute right to discharge their attorneys, they fail to recognize the chilling effect that providing a discharged attorney with a cause of action prior to the occurrence of the contingency has on a client's ability to exercise this right. *See Rosenberg*, 409 So. 2d at 1021. Under the majority's holding, clients must in effect pay to exercise their right to discharge their attorneys because the client is liable for fees to the discharged attorney regardless of whether or when the client recovers on the claim. *See Plaza Shoe*, 636 S.W.2d at 59. Faced with the possibility of paying the discharged attorney prior to any recov-

ery, a client may be forced to continue in service an attorney in whose judgment, capacity or trust the client has lost confidence. *See id.* at 58.

The majority cites *Zimmerman v. Kallimopoulou*, 290 N.Y.S.2d 270, 272–73 (N.Y. City Civ. Ct. 1967), which states that an "attorney's right to compensation cannot be made to depend upon the success or failure of another member of the bar." This appears to be the majority's sole rationale for adopting the New York rule providing for a cause of action at the time of termination of the attorney's services rather than when the contingency occurs. In the majority's view, the possibility of the discharged attorney receiving no compensation because an incompetent successor attorney is unable to obtain a recovery on the client's claim outweighs the burden on the client to pay the attorney upon exercise of the right to discharge and of the inequities of not knowing the ultimate recovery. I cannot agree with the majority for two reasons. First, I prefer to presume competence, rather than incompetence, of another member of the bar. *See Rosenberg*, 409 So. 2d at 1022. Second, the rule allowing for the cause of action to accrue at the time the contingency occurs furthers the desired public policy of allowing a client to discharge his or her attorney at any time, without undue burden, in a manner that is not cost prohibitive; allows the only fair method of determining fees; and underscores the broad objective of promoting greater confidence in the legal profession and the attorney-client relationship.

For the above reasons, I would affirm the superior court's order granting the plaintiff's motion to dismiss the defendant's counterclaim.