NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2016-0178


HARVEY J. GAROD

v.

STEINER LAW OFFICE, PLLC & a.

Argued: January 26, 2017
Opinion Issued: May 17, 2017


Law Offices of Harvey J. Garod, of Laconia (Harvey J. Garod on the brief and orally), for the plaintiff.

Steiner Law Office, PLLC, of Concord (R. James Steiner on the memorandum of law and orally), for the defendants.

LYNN, J. The plaintiff, Harvey J. Garod, appeals an order of the Superior Court (O'Neill, J.) dismissing his conversion action against the defendants, R. James Steiner and Steiner Law Offices, PLLC. We reverse and remand.

I

Accepting the plaintiff's allegations as true, the pertinent facts are as follows. See Coyle v. Battles, 147 N.H. 98, 100 (2001) (noting that, when reviewing a trial court's dismissal of a plaintiff's action, we "assume the truth of

all well-pleaded facts" alleged by the plaintiff).  The plaintiff was retained by a client to pursue a personal injury action.  In connection with the representation, the client signed the plaintiff's standard engagement contract, which states, in relevant part:

> If I discharge my attorney or he withdraws from representation, I agree to pay him at the rate of $350.00 per hour, $175.00 per hour for his legal assistant(s), quantum meruit, or thirty-three and one-third percent (33-1/3%) of the last settlement offer, whichever is greater, from any recovery obtained on my behalf.  I do further agree that my attorney will be entitled to the full contingency fee identified in this contract if he substantially performs under the contract.  I grant my attorney a lien for his fees and costs on any recovery I receive in my case.

The plaintiff worked for the client for two years before being discharged without cause.  The client subsequently hired the defendants, who filed an action (underlying action) on behalf of the client.  The defendants ultimately settled the underlying action on the client's behalf.

Prior to settlement, the plaintiff filed a motion to intervene in the underlying action, asserting that he possessed a contractual lien for fees and costs incurred during his representation of the client.  The client objected to the motion, claiming, among other things, that: (1) intervention would be inappropriate because of the possibility of juror confusion and because the plaintiff retained the ability to bring a separate quantum meruit claim; and (2) the plaintiff had "neither a lien nor a contractual claim" and was limited to recovery in quantum meruit.  The court denied the plaintiff's motion "for the reasons stated in the [client's] objection," without further elaboration.  According to the defendants, the plaintiff subsequently filed a motion to vacate the court's order, which the court denied, ruling that it was "an untimely motion to reconsider."

After the settlement of the underlying action, the client filed a motion to order that the settlement check be made "payable solely to [the client] and her counsel, R. James Steiner."  The court granted the motion.

On the same day, the plaintiff filed a series of motions in the underlying action, including a second motion to intervene wherein he again asserted that he possessed a contractual lien, a motion for interpleader, and a motion to foreclose lien.  The client objected to all these motions, and the court denied all of them without explanation.

The plaintiff then initiated this action against the defendants, again alleging that he had an enforceable contractual lien for fees against the defendants.  The defendants moved to dismiss the action for failure to state a

2

claim. In its order granting the motion, the court noted that the plaintiff's contractual lien claim was "arguably barred by the doctrine of collateral estoppel." Nonetheless, the court found that the plaintiff's claim failed on the merits because he had not submitted any evidence of his contract with the client, and, thus, failed to allege "facts that c[ould] be reasonably construed to meet the elements of an enforceable contract containing the lien term."

The plaintiff moved for reconsideration and for leave to file an amended complaint, along with the proposed amended complaint. The defendants objected to these motions, and moved to dismiss the amended complaint. The court denied the motion for reconsideration and scheduled a hearing on the other motions. After the hearing, the court granted the plaintiff's motion to file the amended complaint and granted the defendants' motion to dismiss the amended complaint, noting that the plaintiff's cause of action "remains barred by the doctrine of collateral estoppel." The court then quoted its earlier order dismissing the plaintiff's original complaint, stating:

> [I]t is plain from the record that [the plaintiff repeatedly asserted that he had a lien when he sought to intervene in the client's underlying action]. It is also clear that at least two separate Justices issued orders rejecting the plaintiff's assertion that he had a lien, thus deciding this issue on the merits. Further, while the plaintiff was not a formal party in the underlying action, the fact that he first raised the issue of the lien in a Motion to Intervene and the court's determination of this issue was the precise basis for denying said Motion suggests that the third condition of collateral estoppel is also met.

(Quotation and citations omitted.) The court also ruled that the plaintiff's amended complaint failed to state a claim because it found, among other things, that our decision in Adkin Plumbing v. Harwell, 135 N.H. 465 (1992), limited him to recovery in quantum meruit. This appeal followed.

II

On appeal, the plaintiff argues that the trial court erred in: (1) finding that his claim is barred by collateral estoppel; (2) invalidating the contractual lien and determining that it is not binding upon the defendants; (3) concluding that quantum meruit was his only method of recovery; and (4) determining that the underlying action filed by the defendants on behalf of the client "extinguished his property rights to the lien AND the secured fees and costs." He also appears to claim that the trial court's various decisions violated his due process rights.

We review motions to dismiss to determine whether the plaintiff's allegations are reasonably susceptible of a construction that would permit

3

recovery. Coyle, 147 N.H. at 100. We assume the truth of all well-pleaded facts alleged by the plaintiff, construing all inferences in the light most favorable to him. Id. On appeal, the plaintiff has the burden to demonstrate error and must provide an adequate record for our review. Id.

A

The plaintiff asserts that his claim is not barred by collateral estoppel because there was no "appearance, hearing, and litigated decision on the merits" relating to his lien claim in the underlying action. The defendants claim that the trial court's rulings denying the motions to intervene should be given preclusive effect so as to bar the present action.

The doctrine of collateral estoppel "bars a party to a prior action, or a person in privity with such party, from relitigating any issue or fact actually litigated and determined in the prior action." 412 S. Broadway Realty v. Wolters, 169 N.H. 304, 314 (2016) (quotation omitted). It may preclude the relitigation of findings made by a previous court when: (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment. Id. "The applicability of collateral estoppel is a question of law that we review de novo." Id. (quotation omitted).

We focus our analysis on whether the attorneys' lien issue was essential to the trial court's decisions. In a comment explaining the final requirement for collateral estoppel, the Restatement (Second) of Judgments states that if "issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." Restatement (Second) of Judgments § 27, cmt. h at 258 (1982). In this case, we must evaluate whether the lien issue was essential when the trial court denied the plaintiff's motion to intervene for multiple reasons without stating which one of those reasons was dispositive. See Tyler v. Hannaford Bros., 161 N.H. 242, 247 (2010).

In this case, the trial court made no specific findings of fact, but we must assume that the court made all findings of fact necessary to support its decisions. See In the Matter of Salesky & Salesky, 157 N.H. 698, 709 (2008). Whether to grant a motion to intervene is a matter committed to the trial court's discretion. See Lamarche v. McCarthy, 158 N.H. 197, 200 (2008). Here, findings with regards to whether the plaintiff had a contractual lien were not necessary or essential to support the trial court's decisions because the trial court, regardless of whatever findings it might have made with regard to that issue, could have denied the plaintiff's motions to intervene for any one of several reasons, including those identified by the client in her objection to the

4

plaintiff's first motion to intervene. With respect to the other motions filed by the plaintiff in the underlying action, i.e., the motions for interpleader and the motion to foreclose lien, because the court gave no explanation for its rulings on these motions, it is entirely possible that the court denied them simply because it had already denied the plaintiff's motions to intervene and therefore concluded that, having been denied intervenor status, the plaintiff had no standing to file the motions in question. For these reasons, we hold that the trial court erred in concluding that the plaintiff's contractual lien claim was barred by collateral estoppel.

B

The plaintiff next argues that, given that both "liens and unsecured identifiable funds are subject to conversion," the trial court erred in dismissing his conversion claim regarding his alleged contractual lien against the defendants. "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Kingston 1686 House, Inc. v. B.S.P. Transportation, Inc., 121 N.H. 93, 95 (1981) (quotation omitted). Because the defendants do not argue that a contractual lien cannot constitute a property interest, for the purposes of this appeal we assume, without deciding, that an attorney's lien for fees is subject to conversion. Consequently, the plaintiff's conversion claim turns upon: (1) whether he possesses a valid contractual lien; and (2) whether that lien is enforceable against the defendants.

The plaintiff asserts that he may recover from the defendants on the basis of the contractual lien granted to him by the client. The plaintiff argues that, because New Hampshire law permits contractual liens, and because the client executed the engagement agreement that included a contractual lien, he is entitled to the full contingency fee and costs secured by that lien. The defendants argue, and the plaintiff does not dispute, that the statutory lien created under RSA 311:13 (2015) is unavailable to the plaintiff inasmuch as it attaches "no earlier than the date of entry of the appearance of counsel" in the "proceeding" to which it relates. Peterson v. Reilly, 105 N.H. 340, 355 (1964). Here, the plaintiff was discharged before any such proceeding was instituted. However, this statute is not the exclusive method by which an attorney may acquire a lien. As the Peterson court noted, long before the enactment of RSA 311:13 in 1963, our law had recognized a common law attorneys' lien against the client's recovery, but the lien was limited to the attorney's "taxable costs and disbursements." Id. at 354; see Wells v. Hatch, 43 N.H. 246, 247 (1861). Moreover, nothing in our jurisprudence forbids an attorney and client from entering into a contract that grants the attorney a lien against any recovery that may be had in the case for which the attorney was engaged, provided the contract conforms to our general rules regarding attorneys' fees. See N.H. R. Prof. Conduct 1.5, 1.8(i)(1); Model Rules of Prof'l Conduct 1.8 cmt. (2014).

5

The defendants dispute the plaintiff's right to a contractual lien on the grounds that our case law restricts him "to a claim against the client in quantum meruit." There is no doubt that we have held that an attorney discharged without fault may not recover pursuant to his contingent fee contract with the client, but is instead limited to a recovery in quantum meruit for the reasonable value of the services rendered prior to being discharged. Adkin, 135 N.H. at 467. Our decision in Adkin is in accordance with the law in a majority of jurisdictions, which holds "that an attorney employed on a contingent fee contract who is discharged without fault . . . before the happening of the contingency is not entitled to recover on the contract, but may recover merely on a quantum meruit basis the reasonable value of the services rendered." 1 Robert L. Rossi, Attorneys' Fees § 3:12, at 3-33 (3d ed. 2016). Yet Adkin does not defeat the plaintiff's entitlement to a lien. Rather, it simply means that, in the event the attorney is discharged before a judgment or settlement is obtained, the amount of the lien is limited to the reasonable value of the discharged attorney's services rather than any different amount that may be specified in the contract.

C

Having thus established that the plaintiff may have a valid lien for the reasonable value of his services, we next consider whether that lien is enforceable against the defendants. The plaintiff asserts that the contract signed by the client is enforceable against the defendants because the defendants were aware of the lien at the time they were retained, and because the client should not be required to pay both lawyers' fees. The defendants' position is that, if the plaintiff has any claim for fees, the claim lies only against the client. Under the particular circumstances of this case, we are persuaded by the plaintiff's argument.

Because the defendants do not argue that they were unaware that the client had discharged a prior attorney before retaining their services, we conclude that the lien for fees claimed by the plaintiff may be enforceable against the defendants. In so holding, we follow the view espoused by the Indiana Supreme Court in Galanis v. Lyons & Truitt, 715 N.E.2d 858 (Ind. 1999). As that court aptly explained:

> In a system of professional responsibility that stresses clients' rights, it is incumbent upon the lawyer who enters a contingent fee contract with knowledge of a previous lawyer's work to explain fully any obligation of the client to pay a previous lawyer and explicitly contract away liability for those fees. If this is not done the successor assumes the obligation to pay the first lawyer's fee out of his or her contingent fee. [The successor lawyer] was in the best position to evaluate and to reach an agreement as to a reasonable fee for the value of the work already done in [the client's] case. "Lawyers almost always possess the more

6

sophisticated understanding of fee arrangements. It is therefore appropriate to place the balance of the burden of fair dealing and the allotment of risk in the hands of the lawyer in regard to fee arrangements with clients." In the Matter of Myers, 663 N.E.2d 771, 774-75 (Ind. 1996). [The successor lawyer] also had the option to discuss with [the client] the need for someone to pay [the prior lawyer's] fee and to refuse to accept the case if [the client] could not resolve any open issues with [the prior lawyer]. [The successor lawyer] neither advised [the client] of the need to pay the fee nor contracted away that responsibility for himself. Under these circumstances, [the successor lawyer], not [the client], should bear the burden of his silence. Accordingly, [the prior lawyer] is entitled to recover the compensation due [him] from [the successor lawyer's] contingent fee.

Galanis, 715 N.E.2d at 863; see also Malonis v. Harrington, 816 N.E.2d 115, 123 (Mass. 2004) ("To avoid disputes in the future, we would advise successor counsel, before he or she receives the case, to confer with the client on the issue and to execute a written agreement unambiguously identifying the party responsible for payment of former counsel's reasonable attorney's fees and expenses."); cf. Lubell v. Martinez, 901 So. 2d 951, 953 (Fla. Dist. Ct. App. 2005) (holding that successor attorney was not required to split contingency fee with prior counsel where successor attorney advised client at retention that client might have to pay both attorneys).

We find the Galanis court's reasoning persuasive, and, therefore, hold that the trial court erred in dismissing the plaintiff's amended complaint. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion. In so doing, we emphasize that, for purposes of this appeal, we have accepted the plaintiff's allegations as true. See Coyle, 147 N.H. at 100. On remand, the plaintiff will bear the burden of establishing the reasonable value of his services, which, as the Galanis court observed, is to be measured by the benefit conferred upon the client — an amount that may or may not be commensurate with the time or effort expended by the plaintiff. See Galanis, 715 N.E.2d at 862. Also relevant to the plaintiff's entitlement to fees will be the issue of whether he was, as he alleges, discharged without cause. See First National Bank of Cincinnati v. Pepper, 454 F.2d 626, 633 (2d Cir. 1972) (stating that "attorney discharged for cause . . . has no right to payment of fees"); cf. People ex rel. MacFarlane v. Harthun, 581 P.2d 716, 718 (Colo. 1978) (en banc) (stating that attorney discharged or removed "for professional misconduct in the handling of his client's affairs" has no right to assert a statutory attorney's lien).

Reversed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.