# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-CA-00343 COA

**ESTATE OF EDWARD H. STEVENS, III**                                    **APPELLANT**

**v.**

**JAMES K. WETZEL AND MGA INSURANCE COMPANY, INC.**          **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/18/96 |
| TRIAL JUDGE: | HON. R. B. REEVES, JR. |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EDWARD H. STEVENS, III |
| ATTORNEY FOR APPELLEE: | JAMES KENNETH WETZEL |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | SUIT AGAINST SUBSTITUTE COUNSEL FOR FAILURE TO PROTECT LIEN OF PRIOR COUNSEL WAS DISMISSED |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED IN PART - 02/09/99 |
| MOTION FOR REHEARING FILED: | 3/11/99 |
| CERTIORARI FILED: | 5/7/99 |
| MANDATE ISSUED: | |

EN BANC.

McMILLIN, P.J., FOR THE COURT:

¶1. The case before the Court today is, at its heart, a dispute between two attorneys regarding fees due from a personal injury action commenced by one attorney but prosecuted to conclusion by the other. There is an additional party to the litigation, namely, the insurance company that paid the judgment in the personal injury suit. The trial court rendered judgment that denied the first attorney any relief against either the second attorney or the insurance company. We reverse that judgment in part and affirm it in part.

**I.**

**Facts**

¶2. Edward Stevens, an attorney, was retained to pursue recovery for personal injuries suffered by Peggy Cuevas in an automobile accident. Cuevas entered into a contingency fee contract with Stevens under which the attorney was to receive one-third of any recovery as his fee. At some point after suit was filed, Cuevas became dissatisfied with Stevens's representation and terminated the contract. Cuevas then retained Wetzel to represent her on essentially the same terms. After Stevens saw his contract terminated, he sought leave to intervene in the pending personal injury action to assert a claim for compensation for his work on the case prior to his termination. The underlying suit had been filed in the federal district court and the motion to intervene was referred to a magistrate judge for resolution. The magistrate judge declined to permit Stevens to intervene; however, the ruling was based on procedural considerations and did not reach the merits of Steven's right to compensation. Stevens made no effort to appeal the magistrate judge's ruling to the district judge. Instead, he continued informal contacts with Wetzel in which he insisted on his right to payment. The record does not reflect any contact by Stevens with the insurance company after his motion to intervene in his former client's suit was denied.

¶3. The judgment ultimately recovered in the personal injury action was substantially less than all parties involved had expected. The jury assessed damages at $45,000. Wetzel, on behalf of his client, indicated to MGA Insurance, which provided liability coverage for the tortfeasor defendant, that an appeal based on the inadequacy of the verdict was anticipated. At that point, a settlement was reached whereby MGA Insurance agreed to pay $52,500, which was $7,500 more than the jury's verdict. In exchange, Cuevas agreed to forego any right of appeal.

¶4. MGA Insurance disbursed the settlement proceeds by draft payable jointly to Wetzel and his client. Wetzel, with his client's consent, deposited the funds in his trust account and disbursed the funds. He paid himself one-third of the gross recovery plus an additional sum for costs and expenses he had advanced in connection with the litigation. He tendered the sum of $2,479.38 to Stevens as reimbursement for expenses incurred by Stevens prior to his discharge. The remainder of the settlement proceeds were disbursed in various amounts to certain medical providers who had treated Cuevas's injuries arising from her accident. Apparently, because of the magnitude of the outstanding medical bills, Cuevas did not receive any of the settlement proceeds herself. Stevens refused the tender of $2,479.38, claiming instead that he was entitled to an additional amount for *quantum meruit* compensation for his services. He asked for $8,618.75 together with actual expenses of $3,070.48 for a total amount of $11,689.33.

¶5. When it became apparent that a payment in that amount would not be made, Stevens commenced this action against Wetzel and MGA Insurance, claiming that Stevens had a valid lien against the settlement fund in the amount of $11,689.33 and that both Wetzel and MGA Insurance were liable for their participation in the disbursement of the settlement proceeds in a manner that ignored his rights in the fund.

¶6. Wetzel defended by saying that he had no obligation to see that Stevens was paid for his work on the case and that the sole remedy available to Stevens was an action directly against his former client.

¶7. MGA Insurance defended on the basis that it had disbursed the settlement proceeds jointly to the plaintiff and Wetzel as plaintiff's counsel of record in the proceeding and that this fully discharged its obligations in the matter.

¶8. The trial court expressed the view that Stevens was entitled to compensation for his pre-termination services on a *quantum meruit* basis. However, the court held that neither MGA Insurance nor Wetzel had

any liability to Stevens for payment of any such fee. Rather, according to the trial court, Stevens's sole remedy was to bring an action for payment directly against his prior client.

## II.

## General Discussion

¶9. Before reaching the individual liability of either defendant, we believe that some general discussion of the principles involved in this case would be helpful. We agree with the trial court's conclusion that Stevens's claim, at its foundation, was the sole obligation of his former client, who had terminated him from the contract and employed Wetzel in his place. *Martin v. Camp,* 114 N.E. 46, 48 (N.Y. 1916). Having said that, however, we are of the opinion that this proposition does not legitimately answer the issues now faced by the Court.

¶10. Stevens's claim against MGA Insurance and Wetzel arises out of the proposition that, once there was an identifiable fund of money that represented the proceeds derived from the successful pursuit of the client's tort claim, Stevens was entitled to an attorney's charging lien on those funds to secure his right to payment from his former client. Thus, according to Stevens's theory, if an entity having control of that fund with actual notice of the existence of Stevens's lien suffered the dissipation of the funds in a manner that ignored Stevens's lien, that entity committed an act of conversion for which liability would arise. As a general proposition of law, we find this theory of recovery to have merit. It thus becomes necessary to determine whether the largely undisputed facts of this case would support a finding of liability against either or both of these defendants on this theory of the law. For reasons which we will proceed to explain, we conclude that the facts would support recovery against Wetzel but would not support a recovery against MGA Insurance.

## III.

## Stevens's Entitlement to Payment

¶11. There is no legitimate point of dispute on the issue of Stevens's right to compensation. Every contingency fee contract has a provision, incorporated by implication if it does not explicitly appear in the text, that permits the client to discharge the attorney at any time with or without cause. *Martin,* 114 N.E. at 48. For that reason, a discharged attorney, no matter how faithfully that attorney has been performing his duties in pursuit of the client's claim, has no action for breach of contract against the client. *Id.* Nevertheless, because the law recognizes that the attorney, prior to discharge, may have performed valuable services to the client, that attorney is permitted to seek recovery from the former client of the reasonable value of those services in a *quantum meruit* action. *Id.* There is some split of authority in other jurisdictions as to when such a cause of action arises. Some states hold that the right to compensation arises immediately after termination. *Id.* at 48-49; *Estate of Callahan v. Parkhurst,* 578 N.E.2d 985, 988 (Ill. 1991); *Adkin Plumbing & Heating Supply Co., Inc. v. Harwell*, 606 A.2d 802, 804 (N.H. 1992). Other jurisdictions, concluding that, until there is a recovery on the client's underlying claim, there is no basis to determine whether, or to what extent, the discharged attorney's services were of value to the client. Thus, in those jurisdictions, the cause of action does not arise until there has been an actual recovery on the client's underlying claim. *Fracasse v. Brent,* 494 P.2d 9, 14 (Cal. 1972)*; Rosenberg v. Levin,* 409 So. 2d 1016 1022 (Fla. 1982). Though there is no clear authority in Mississippi either way on this point, we conclude that its determination is not necessary for our decision in this case since, at the time Stevens commenced this

action, there had been an actual recovery on the client's claim, albeit the recovery was apparently substantially less than the affected attorneys and the client had hoped for.

¶12. We are thus satisfied that, at the time Stevens filed this suit, he had a legitimate, though unliquidated, claim against his former client for compensation for those legal services he had performed prior to his discharge from the case.

## IV.

### The Existence of a Lien in Favor of Stevens

¶13. Mississippi law has long recognized that an attorney, in two situations, may have a lien against assets actually belonging to the client, the purpose of the lien being to ensure the satisfaction of those fees due to the attorney by the client. One such lien is called a retaining lien, which simply permits an attorney to retain any property actually in the attorney's possession, no matter how that possession occurred, until such time as the client satisfies any fees due the attorney. *Tyson v. Moore,* 613 So. 2d 817, 826 (Miss. 1992). The other lien, which has some pertinence in the case now before us, is called an attorney's charging lien. A charging lien lies against any fund of money or other property belonging to the client when that fund is generated or the property is recovered through the efforts of the attorney on his client's behalf. *Id.* Such a lien attaches once that fund is created or once the property itself is finally adjudicated as being the property of the client. *Id.* One of its principal differences from a retaining lien is that, although it often is enforced against property in the possession of the attorney, it is not necessarily a possessory lien. Thus, in the case of the settlement of a tort claim such as this, the lien attaches in favor of the attorney once the right of the client to payment becomes absolute even though the funds may be in the hands of the judgment debtor or the judgment debtor's insurance company at the time. It is, in fact, in recognition of this charging lien that an insurance company or any other entity paying a judgment or settlement routinely makes the claimant's attorney a joint payee on the disbursement draft, since otherwise the claimant would have the undisputed right to demand payment solely in the claimant's name.

¶14. The question arises, then, as to whether a discharged attorney, at a time when he no longer is providing legal services to his former client, nevertheless has this charging lien against any sums ultimately recovered on the claim to secure his right of quantum meruit compensation for his earlier efforts in the case. We conclude that he does. *See, e.g. Tyson,* 613 So. 2d at 826. If the purpose of the lien is to ensure that the attorney is compensated for services expended in the successful pursuit of recovery of a sum of money, the fact that an attorney provided only some preliminary portion of the services necessary to accomplish the desired result does nothing to diminish the fact that the services were beneficial in reaching the ultimate goal.

¶15. In this case, the ultimate recovery amounted to $52,500. Though there is clear indication in the record that this amount was substantially less than was anticipated, the fact remains that it constituted a substantial sum that was sufficient to permit Stevens some reasonable measure of payment for his preliminary work on the case. We conclude that, as a matter of law, once the final terms of the settlement of this claim were negotiated between Wetzel, acting for his client, and MGA Insurance, acting for its insured, Stevens was entitled to, and was actually vested with, an attorney's charging lien against the settlement fund to secure his right to *quantum meruit* payment.

¶16. We must, therefore, deal with the fact that, despite the existence of this lien, the funds against which the lien existed have now been dissipated and were, in fact, dissipated prior to the initiation of this litigation. It is because of the lien's existence that potential liability arises as to any entity that participated in the distribution of the settlement proceeds in disregard of the lien.

## V.

### Ignoring an Existing Lien as Constituting an Act of Conversion

¶17. As we have previously observed, the thrust of Stevens's action against these two defendants is that both participated in acts that had the ultimate effect of putting the settlement funds beyond the reach of his charging lien, thereby effectively destroying any legitimate value that the lien might have. We find this to be, in theory at least, a valid basis for recovery. Other jurisdictions have recognized that a person who disburses funds upon which another has a valid lien when the disbursement ignores the validity of the lien has committed an act of conversion. *Northeast Bank of Lewiston and Auburn v. Murphy,* 512 A.2d 344, 347 (Me. 1986). We see no reason why our case law would not compel a similar result. In *LaBarre v. Gold,* for example, the Mississippi Supreme Court held that, by disbursing proceeds from the sale of a parcel of property while having actual knowledge that a person not appearing in the record title claimed an interest in those proceeds, an attorney committed an act of conversion as to that person. *LaBarre v. Gold,* 520 So. 2d 1327, 1330 (Miss. 1987).

¶18. Having reached the conclusion that Stevens has advanced a legitimate theory of recovery, we must now proceed to determine whether all things were done at the time of disbursement of the settlement proceeds to establish the validity and enforceability of Stevens's lien. In fact, because we are faced with two defendants and each defendant's actions were undertaken at separate times, we are actually faced with two potential acts of conversion. The first would be when MGA Insurance disbursed the settlement proceeds to the judgment creditor and Wetzel, to the exclusion of Stevens, and the second would be when Wetzel undertook to further distribute the proceeds in disregard of Stevens's claim of a right to receive a *quantum meruit* award of some part of the settlement funds.

## VI.

### Perfection of the Lien

¶19. The attorney's charging lien is a common law lien and is not a creature of statute. Thus, there is no statutory method for perfection of the lien through some formal filing process to ensure its enforceability against third parties such as MGA Insurance and Wetzel. The question thus arises as to what steps an attorney wishing to enforce such a lien must take in order to perfect the lien and insure its effectiveness against the particular fund against which the lien lies. There is no specific authority in this State that purports to answer the question. We find persuasive the Florida case of *Gaebe, Murphy, Mullen & Antonelli v. Bradt,* which held that the only requirement to perfect the lien against funds in the hands of a third party is to provide timely notice of the existence of the claim to the actual holder. *Gaebe, Murphy, Mullen & Antonelli v. Bradt,* 704 So. 2d 618, 619 (Fla. Dist. Ct. App. 1997). This position would also appear to be in accord with our supreme court's ruling in the *LaBarre v. Gold* case previously discussed, since actual notice of the claim in that case was enough to create liability. We, therefore, hold that proof that actual notice that such a charging lien is being asserted, if received by the holder of the fund prior to disbursement, is sufficient to perfect the asserted lien and that any subsequent act of disbursement by the holder of the fund

in disregard of the lien is done at the holder's peril.

¶20. Having determined this to be the applicable law, we must now proceed to apply the law to the facts before us as to each of the named defendants.

## A.

## MGA Insurance

¶21. The only notice MGA Insurance had that Stevens was asserting a charging lien against any proceeds paid on the claim was the fact that Stevens attempted to intervene in the underlying suit to have his lien enforced directly in that proceeding. As we have noted, Stevens's attempt to intervene in the suit was thwarted when the magistrate judge denied the motion and Stevens did not attempt to appeal that ruling to the district judge. There is nothing in the record that Stevens undertook any action after his motion to intervene was denied to notify MGA Insurance that, despite that setback, Stevens was still intent on pursuing his right to compensation out of any judgment recovered in that suit. On those facts, MGA Insurance could, in the opinion of this Court, reasonably conclude that Stevens had abandoned his lien claim. Having no notice of Stevens's claim beyond this half-hearted and apparently abandoned effort to enforce his charging lien in the underlying suit, MGA Insurance was not on actual notice of the existence of such a claim at the time it distributed the proceeds. Thus, its act of disbursing the settlement proceeds to Wetzel and his client, to the exclusion of Stevens, cannot, under the law as we have determined it to be, constitute an act of conversion. Therefore, we conclude that the trial court was correct in granting judgment in favor of MGA Insurance.

## B.

## Attorney Wetzel

¶22. We face a substantially different set of facts, however, when we turn to Wetzel's acts in accepting the settlement proceeds and causing the entire settlement amount to be disbursed in disregard of Stevens's asserted claim to an attorney's charging lien against those funds. Though Wetzel, like MGA Insurance, was aware that Stevens's attempts to intervene in the underlying litigation had been abandoned, the record is clear that Stevens continued to pursue his right of compensation in dealings directly with Wetzel. The record is replete with evidence in the form of written communications between the attorneys that Stevens was asserting his right to be paid out of settlement proceeds and that Wetzel was on actual notice of such a claim. In fact, the record indicates that the sole point of contention was that Wetzel and Stevens were -- not unexpectedly -- unable to agree on a fair amount to compensate Stevens for his pre-termination work on the case. Stevens was asserting a claim based strictly on the number of hours he had worked multiplied by what he considered to be a reasonable hourly rate for such legal services. Wetzel, on the other hand, appeared to be of the opinion that, in view of the disappointingly low recovery obtained in the case, Stevens's efforts were simply not worth the amount he was demanding.

¶23. It was at that point that Wetzel elected to unilaterally ignore altogether Stevens's claim for compensation (except for certain actual expenses expended by Stevens) and to disburse the entire settlement. Wetzel tendered a check to Stevens in the amount of $2,479.38 for those expenses, but Stevens rejected that tender, electing instead to commence this litigation.

¶24. This Court is of the opinion that, by these actions, Wetzel committed an act of conversion in

derogation of Stevens's existing lien. The mere fact that an attorney claiming a yet unliquidated charging lien has asserted the lien to be in an amount that the holder of the fund deems excessive does not constitute authority for the holder to simply ignore the existence of the lien. There are certainly legal procedures available, such as an interpleader action, to resolve competing rights to the same fund of money by adjudicating the proper amount of the lien. When Wetzel elected, of his own volition, to ignore Stevens's legitimate lien against the settlement proceeds and disburse the funds elsewhere solely because he (Wetzel) thought the amount claimed by Stevens was excessive, he committed an act of conversion for which he may be made to answer under the law.

¶25. Because we conclude this to be the case, we find that the trial court erred in ruling that Stevens had no claim against Wetzel. This necessarily requires us to reverse and remand for further proceedings against Wetzel. Having reached this decision, we are compelled to discuss some additional aspects of this case that ought properly to be dealt with on remand.

## VII.

### Ethics

¶26. The trial court based its ruling in part on an Ethics Opinion issued by the Mississippi State Bar that provides that, in a case such as this, "[t]he substituting lawyer does not owe an ethical duty to the substitute lawyer with regard to any fees." Mississippi State Bar, Ethics Opinion No. 144 (1988).

¶27. We do not, by our decision today, purport to override or disagree with the Bar's decisions as to the ethical responsibilities of an attorney who succeeds in the representation of a client on a contingency fee basis. That is not the proper function of this Court in these circumstances. Our decision is based upon principles of law dealing with the existence and enforcement of a particular common law lien. Our reasoning has brought us to this result, not because Wetzel was an attorney under an ethical obligation to protect Stevens's claim, but because he disbursed funds that were subject to a valid, perfected, lien in disregard of the lien's existence. Those considerations would apply with equal force to any holder of the settlement funds, attorney or not, having actual notice of the existence of Stevens's lien who disbursed the funds in a manner that defeated the force of the lien. We recognize in this opinion an obligation created by law and not one having any basis in those ethical obligations that bind the attorneys of this State.

## VIII.

### Determination of Fees

¶28. The right to compensation based upon the equitable concept of quantum meruit is not so simple as Stevens asserts. It is something more than simply computing the hours worked and multiplying those hours by a reasonable hourly rate. While that may be a proper starting point, the fact-finder must then further inquire as to whether those hours expended were actually necessary and whether they returned a value to the client. Quantum meruit, according to Black's Law Dictionary, invokes the phrase "as much as deserved." Black's Law Dictionary (6th ed. 1990). It does not involve the concept of detriment to the attorney but rather hinges on the issue of the benefit conferred on the client. For that reason, we conclude that, in a case such as this, when the ultimate benefit to the client turns out, for reasons beyond the control of the parties, to be less than initially expected, the level of compensation to the discharged attorney, when determined under principles of *quantum meruit*, may be diminished to something less than full payment for

time expended at the prevailing hourly rate for such services.

¶29. **THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IN FAVOR OF THE APPELLEE, MGA INSURANCE COMPANY, INC., IS AFFIRMED. THE JUDGMENT IN FAVOR OF THE APPELLEE, JAMES K. WETZEL, IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THE APPEAL ARE TAXED TO THE APPELLEE, JAMES K. WETZEL.**

**BRIDGES, C.J., COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. THOMAS, P.J., IRVING AND LEE, JJ., NOT PARTICIPATING.**