NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2013-452


MAHINDRA & MAHINDRA, LTD.

v.

HOLLOWAY MOTOR CARS OF MANCHESTER, LLC & a.

Argued: April 16, 2014
Opinion Issued: September 30, 2014


Shaheen & Gordon, P.A., of Concord (Steven M. Gordon and Benjamin T. Siracusa Hillman on the brief), and King & Spalding, LLP, of Atlanta, Georgia (L. Joseph Loveland on the brief and orally), for the petitioner.


Holmes Law Offices PLLC, of Concord (Gregory A. Holmes on the brief and orally), for the respondents.


CONBOY, J. The petitioner, Mahindra & Mahindra, Ltd. (Mahindra), appeals a decision of the Superior Court (Smukler, J.) affirming a default judgment by the New Hampshire Motor Vehicle Industry Board (Board) in favor of the respondents, Holloway Motor Cars of Manchester, LLC, Peters Auto Sales, Inc., and Crest Chevrolet, Inc. (collectively "dealers"). Mahindra argues that the trial court erred by finding that the Board had personal jurisdiction over Mahindra and subject matter jurisdiction to adjudicate the dealers' claims

against Mahindra. We vacate the order of the superior court and remand with instructions to remand to the Board for further proceedings consistent with this opinion.

I. Background

The following facts are drawn from the trial court's order, the record, or are otherwise undisputed on appeal. On July 12, 2011, the dealers filed a protest with the Board alleging that Mahindra, a motor vehicle manufacturer based in Mumbai, India, violated RSA chapter 357-C. See generally RSA 357-C:3, :7 (2009 & Supp. 2013). The dealers asserted that Mahindra entered into a distributor agreement with Global Vehicles, U.S.A. Inc. (Global Vehicles) by which Global Vehicles became the exclusive distributor of Mahindra's motor vehicles in the State of New Hampshire. They further alleged that the dealers paid a fee to Global Vehicles in order to become dealers of Mahindra's motor vehicles. The dealers claimed that Mahindra "violated RSA [chapter] 357-C by its wrongful termination of the Distributor Agreement with Global [Vehicles], its announced intention not to honor the franchise agreements held by the dealers, and its refusal to provide motor vehicles to Global [Vehicles] and the dealers in accordance with its agreement and state law." Although the dealers had entered into agreements only with Global Vehicles, they brought their protest against both Mahindra and Global Vehicles.

The Board issued a notice of pre-hearing conference to the dealers, Global Vehicles, and a senior vice president of Mahindra U.S.A., a subsidiary of Mahindra, in Kennesaw, Georgia. The notice to Mahindra U.S.A. was returned. Mahindra did not participate in the pre-hearing conference. After the conference, the dealers attempted service of the protest on Mahindra through a variety of means. They sent copies of the protest by certified mail to Mahindra's counsel in Georgia and to the president of Mahindra's automotive and farm equipment sector at an address in Houston, Texas. The dealers also sent a copy of the protest to the same Mahindra sector president at an address in Mumbai, India, which was delivered by United Parcel Service. In addition, the dealers sent a copy of the protest to the sheriff's office in Marietta, Georgia, for service on the senior vice president of Mahindra USA Automotive. The sheriff's return stated that the individual could not be found.

On May 22, 2012, the Board issued a notice of hearing to the dealers, Global Vehicles, and Mahindra's sector president in Houston, Texas. Mahindra's attorney in Georgia sent a letter to the Board (the "letter") responding to the hearing notice and requesting that all claims against Mahindra be dismissed. The letter was filed "for the limited purpose of raising three objections:"

First, Mahindra respectfully submits that it is not subject to the Board's jurisdiction because Mahindra was never served with

2

the July 12, 2011 Protest. Second, Mahindra also is not subject to the Board's jurisdiction because Mahindra does not manufacture or assemble new motor vehicles for use and operation on the public highways of New Hampshire. Third, as set forth further herein, [the dealers'] protest improperly asks this Board to interject itself into a private contractual dispute between Global Vehicles and Mahindra. This dispute was decided in Mahindra's favor earlier this year following an international arbitration that Global Vehicles initiated in London pursuant to a binding arbitration clause in the Mahindra-Global Vehicles Distributor Agreement. Accordingly, even if the Board had jurisdiction over the contract dispute between Global Vehicles and Mahindra (it does not), that dispute was subject to an arbitration where Global Vehicles' claims have been soundly rejected.

With respect to the third objection, relating to the arbitration with Global Vehicles, the letter explained:

Even if the Board finds that it has jurisdiction over Mahindra, Mahindra observes that [the dealers'] Protest consists primarily of allegations about the Mahindra-Global Vehicles Distributor Agreement, to which [the dealers] are not parties. . . .

In the arbitration, Global Vehicles had claimed that Mahindra engaged in certain conduct in violation of the Distributor Agreement. . . . [T]he arbitral tribunal rejected Global Vehicles' claims, including the claim that Mahindra wrongfully terminated the Distributor Agreement. Instead, the tribunal found that the Distributor Agreement automatically terminated on June 11, 2010 according to its own terms, and that Mahindra had not otherwise violated any state or federal dealer laws that may govern the relationship between Mahindra and Global Vehicles.

[The dealers] have not alleged that they entered into any separate contracts with Mahindra. To the extent [the dealers] intend to re-litigate Global Vehicles' claims against Mahindra on Global Vehicles' behalf in this forum, any issues relating to the prior dispute between Global Vehicles and Mahindra -- including but not limited to any issues related to the performance and termination of a Distributor Agreement to which [the dealers] are not parties -- should be off-limits in this forum. Those disputes were subject to Section 60(b) of the Distributor Agreement and have already been decided in a binding overseas arbitration.

The Board concluded that, because neither Global Vehicles nor Mahindra appeared for the final hearing despite being properly noticed, they had

defaulted. The Board additionally found and ruled "that Mahindra and Global [Vehicles] ha[d] violated RSA 357-C:3 and RSA 357-C:7" and barred Mahindra from doing business in New Hampshire until it "appears before th[e] Board to answer to th[e] protest."

Mahindra filed a motion asking the Board to vacate the default judgment, arguing that, because India and the United States are parties to the Hague convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T 361 (Hague Service Convention), the dealers could have effectuated service of process on Mahindra only by complying with its requirements. Mahindra argued that the methods of service attempted by the dealers did not comply with the Hague Service Convention and sought dismissal of the protest for lack of service. The Board denied the motion.

Mahindra appealed the Board's order to the superior court in accordance with RSA 357-C:12, VII (2009), arguing that the dealers did not serve Mahindra in accordance with the Hague Service Convention. Mahindra also asserted that the Board lacked subject matter jurisdiction over the dispute because Mahindra did not manufacture motor vehicles for sale or operation in New Hampshire. The court affirmed the Board's decision, finding that, notwithstanding the applicability of the Hague Service Convention, the third objection in the letter to the Board "raise[d] a defense to the protest, the ground of preclusion." The trial court, therefore, concluded that "Mahindra waived service and submitted to the jurisdiction of the [Board]." The trial court also found that the dispute was within the scope of RSA 357-C:2 (2009), such that the Board had subject matter jurisdiction to hear the protest. Mahindra's motion for reconsideration was denied, and this appeal followed.

II.  Standard of Review

The trial court's review of the Board's decision is governed by RSA 357-C:12, VII, which provides:

> All findings of the board upon all questions of fact properly before the court shall be prima facie lawful and reasonable. The order or decision appealed from shall not be set aside or vacated except for errors of law. No additional evidence shall be heard or taken by the superior court on appeals from the board.

Our review of the trial court's decision is similarly limited:  we will not set aside or vacate the trial court's decision except for errors of law. See Strike Four v. Nissan N. Am., 164 N.H. 729, 735 (2013).

4

III. Analysis

Mahindra asserts that "there is no dispute that [it] was never properly served by the [dealers] in this matter," and argues that the trial court erred in finding that it waived its right to insist on proper service pursuant to the Hague Service Convention. The dealers contend that they were not bound by the requirements of the Hague Service Convention in this case and that, regardless of the convention's applicability, Mahindra waived its challenge to service and jurisdiction. We agree with Mahindra, and find that the trial court erred as a matter of law.

A. Service of Process

"In order to obtain jurisdiction over an out-of-state defendant, proper service of process is required." Impact Food Sales v. Evans, 160 N.H. 386, 390 (2010). If personal service is not effected within the boundaries of the State, see RSA 510:2 (2010), "jurisdiction over a nonresident can only be obtained if the legislature has provided another method of service of process." South Down Recreation Assoc. v. Moran, 141 N.H. 484, 486 (1996) (quotation omitted). "This requirement is separate from the due process requirement that the defendant have minimum contacts with the jurisdiction such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. at 486-87 (quotation omitted). "Although we construe our statutes providing personal jurisdiction over nonresidents to the full constitutional limit, we also consistently require strict compliance with statutory requirements for service of process." Id. at 487 (citation and quotation omitted); see also Estate of Lunt v. Gaylor, 150 N.H. 96, 97 (2003). "Where a statute points out a particular method of serving process[,] such method must be followed." South Down Recreation Assoc., 141 N.H. at 487 (quotation and ellipses omitted).

The Hague Service Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 1, 20 U.S.T 361, 362. The convention was implemented "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698 (1988); see also Hague Service Convention, Preamble, 20 U.S.T. at 362. Both the United States and India are signatories to the treaty. See U.S. Dep't of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2013 410 (2013).

In their answer and counterclaim to Mahindra's appeal to the superior court, the dealers asserted that the requirements of the Hague Service

Convention are inapplicable when service is made in the United States. They further asserted that they effectuated proper service on Mahindra by serving its attorney in Georgia and its sector president in Houston, Texas. However, at the hearing before the trial court, the dealers conceded that, absent a waiver, the Hague Service Convention governed service of process in this proceeding. The following exchange occurred between the court and counsel for the dealers:

> THE COURT: In other words, if there were not a waiver, would the Hague [Service] Convention govern?
>
> [COUNSEL]: I agree, it would.
>
> . . . .
>
> THE COURT: I understand that you're arguing the waiver, but you're not contesting that the Hague [Service] Convention governs?
>
> [COUNSEL]: It does govern.

At no point during the proceedings before the trial court did the dealers retreat from this concession that, absent a waiver by Mahindra, the convention governed service requirements. Under these circumstances, we conclude that the dealers are bound by their concession. See Doyle v. Comm'r, N.H. Dep't of Resources & Economic Dev., 163 N.H. 215, 221-22 (2012) (declining to consider whether park was limited public forum or nonpublic forum because trial court premised its ruling on defendants' representation that park was traditional public forum and plaintiff relied on that representation); TNS Mills, Inc. v. S.C. Dept. of Revenue, 503 S.E.2d 471, 474 (S.C. 1998) ("An issue conceded in a lower court may not be argued on appeal."); cf. State v. Ayer, 150 N.H. 14, 29 (2003) (State conceded issue at oral argument on appeal and therefore we were "foreclosed" from considering it). We note that the trial court did not rule on the issue of whether the dealers' service on individuals in the United States obviated the service requirements under the convention, and that, subsequent to their concession, the dealers did not seek such a ruling. To the extent that the dealers ask us to revive their assertion that service on individuals in the United States was sufficient, we decline to do so; in their appeal, they have failed to support this assertion with any developed legal analysis. See Camire v. Gunstock Area Commission, 166 N.H. ___, ___ (decided June 18, 2014).

As to whether the dealers, in fact, effectuated service pursuant to the convention, the trial court found that, "[a]lthough they originally disputed it, the [dealers] now concede that they did not effectuate service that conforms to the Hague [Service] Convention." Because the dealers did not challenge this finding and have advanced no argument that they effectuated service in

6

compliance with the convention, we hold that Mahindra did not receive sufficient service of process.

### B. Waiver of Challenge to Service

Mahindra argues that because it did not waive its right to insist on proper service in the letter, the trial court erred in finding that the Board had personal jurisdiction. The dealers argue that the trial court correctly concluded that, regardless of the applicability of the Hague Service Convention, Mahindra waived any challenge that it might have had to the validity of service or personal jurisdiction. They assert that "Mahindra sought to have the protest dismissed by claiming that the favorable result in the arbitration is an affirmative bar to the protest." They argue that because Mahindra submitted this issue to the Board, it submitted itself to the Board's jurisdiction. We disagree.

The dealers rely upon Lyford v. Academy, 97 N.H. 167, 168 (1951), which states: "[A]n objection to service or notice is waived when a party, by general appearance or otherwise, submits any other question, except the sufficiency of service or notice, to the court or other tribunal." Lyford, 97 N.H. at 168 (quotation omitted). We note that although a new rule regarding waiver of personal jurisdiction challenges became effective in October 2013 with respect to proceedings in the superior court, no party asserts that the new rule should apply in this case. See Super. Ct. Civ. R. 9(f) & cmt. ("Under the new rule . . . the litigant [will not] be deemed to have waived such challenges and submitted to the court's jurisdiction by filing an Answer or other pleadings or motions that raise issues aside from personal jurisdiction, sufficiency of process or sufficiency of service of process."). Accordingly, we look to our prior precedents to determine whether Mahindra waived the service requirements in this case.

"[W]aiver, like any question of fact, is to be determined upon all the evidence and is not concluded by the declaration of the party." Lyford, 97 N.H. at 168 (quotation omitted). "It is the character of his acts in praying the consideration of the court, and not the form of the statements which the defendant makes, which determines the effect of his conduct." Id. (quotation omitted). "The question is whether he has in fact submitted himself to the jurisdiction of the tribunal." Id. "The effect of the defendant's action is to be determined not solely with reference to isolated allegations contained in its pleadings, but with respect to its action as a whole." Id. at 169. "Any act which recognizes the jurisdiction [of the tribunal] has some tendency to show that the actor intends to submit to it." Dolber v. Young, 81 N.H. 157, 159 (1923). Although waiver ordinarily is a question of fact, see Lyford, 97 N.H. at 168, here, because the trial court's waiver finding was based solely upon Mahindra's letter, the waiver issue presents a question of law that we review de novo. See Edwards v. RAL Auto. Group, 156 N.H. 700, 705 (2008) (the

7

interpretation of written documents is a question of law that we review <u>de novo</u>); <u>Masse v. Commercial Union Ins. Co.</u>, 136 N.H. 628, 632 (1993) ("As all the documents . . . are available for our perusal, the [trial] court was in no better position to decide the case than are we." (quotation omitted)).

The language in Mahindra's letter is distinguishable from the circumstances in other cases in which we have held that a defendant waived objection to service. For instance, we have concluded that defendants waived their objections to service of process by asserting an affirmative defense, <u>see</u> <u>Gagnon v. Croft Manufacturing & c. Co.</u>, 108 N.H. 329, 330 (1967) (holding defendant waived jurisdictional claim by including plea of statute of limitations); by actively participating in the case, <u>see</u> <u>Dolber</u>, 81 N.H. at 159 (determining that defendant's "application for a commission to take depositions to be used in the trial of [the] issue was an unreserved invocation of the jurisdiction"); and by addressing the merits of the plaintiff's claims, <u>see</u> <u>Barton v. Hayes</u>, 141 N.H. 118, 120 (1996) (holding that defendant waived jurisdictional argument by conceding liability in a motion to strike default judgment). <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Druding v. Allen</u>, 122 N.H. 823, 826-27 (1982) (holding that party waived any jurisdictional objections and submitted himself to the court's jurisdiction by "fil[ing] various pleadings with the court, including requests for substantive findings and rulings"); <u>Jewett v. Jewett</u>, 112 N.H. 341, 342-43 (1972) (concluding that defendant "waived all objection to the sufficiency of the service or notice" because his counsel tried the case on the merits). In these cases, our determination that the defendants had waived any objection to jurisdiction was based upon the premise that the defendants could not "at the same time invoke the judgment of the court upon the merits of the case and deny its jurisdiction." <u>Dolber</u>, 81 N.H. at 159.

Here, Mahindra's letter did not ask the Board to resolve an issue with the dealers while simultaneously arguing that the Board did not have jurisdiction. The third objection in the letter sought only to apprise the Board of a "private contractual dispute between Global Vehicles and Mahindra" that was "subject to an arbitration where Global Vehicles' claims ha[d] been soundly rejected." In its letter, Mahindra stressed that the dealers' protest "consists primarily of allegations about the Mahindra-Global Vehicles Distributor Agreement, to which [the dealers] are not parties." The letter, therefore, identified an agreement, subject to binding arbitration, which governed the dispute between Mahindra and Global Vehicles — the two named respondents in the proceeding before the Board.

In support of their argument that Mahindra waived its jurisdictional objection, the dealers rely upon the trial court's assessment that the third objection in Mahindra's letter "raises as a defense to the protest, the ground of preclusion" and interpret the letter as asserting "that a prior proceeding fully and finally resolved the dispute between the parties." We read the language of the letter differently and disagree with the trial court's conclusion.

8

The doctrine of issue preclusion (collateral estoppel) bars a party to a prior action, or a person in privity with such party, from relitigating any issue or fact actually litigated and determined in the prior action. Hansa Consult of N. Am. v. Hansaconsult Ingenieurgesellschaft, 163 N.H. 46, 50 (2011); see Aubert v. Aubert, 129 N.H. 422, 425 (1987) (recognizing collateral estoppel and issue preclusion as the same doctrine).

> Under certain circumstances, collateral estoppel may preclude the relitigation of findings made by a previous court when: (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment.

Hansa Consult of N. Am., 163 N.H. at 50.

In the letter, Mahindra did not assert a collateral estoppel defense. It did not allege that the issues raised before the Board and resolved in arbitration were identical. Rather, in the letter, Mahindra noted that the dealers asked the Board "to adjudicate certain alleged conduct by Mahindra that allegedly violates RSA 357-C:3 and RSA 357-C:7," while the arbitration decided the "contractual dispute between Global Vehicles and Mahindra." Mahindra noted the distinction between the dispute with Global Vehicles — which the arbitration governed — and the dispute before the Board. Given the distinction between the disputes, nothing in Mahindra's letter can be read to assert that the issue before the Board was identical to the issues resolved in the arbitration.

Moreover, in its letter, Mahindra did not assert that the dealers appeared in the arbitration action or were in privity with someone who appeared. Instead, the letter stated that the dealers were not a party to the Distributor Agreement that was at issue in the arbitration. Nonetheless, the dealers argue that "[a]lthough Mahindra did not use the legal label[] of privity . . ., Mahindra was claiming that the [dealers] were in privity with Global [Vehicles] because the [dealers'] protest consists 'primarily of allegations about the Mahindra-Global Vehicles Distributor Agreement'" and also because Mahindra claimed that the dealers "intend to re-litigate Global Vehicles' claims against Mahindra on Global Vehicles' behalf." We disagree with this interpretation.

"The relationship between party and non-party implied by a finding of privity in the estoppel context has been described as one of virtual representation, and substantial identity." Cook v. Sullivan, 149 N.H. 774, 779 (2003) (quotation omitted). These phrases imply not a formal, but a functional, relationship, in which, at a minimum, the interests of the non-party were in fact represented and protected in the prior litigation. Id. Thus, privity is found

to exist, for example, when a non-party controls or substantially participates in controlling the presentation or if a non-party authorizes a party in litigation to represent his or her interests. Id. Nothing in Mahindra's letter suggests that the dealers' interests were in fact represented during the arbitration or that the dealers authorized Global Vehicles to represent their interests.

Consequently, we reject the dealers' argument that the third objection in Mahindra's letter raised a collateral estoppel defense. Rather, in the letter, Mahindra simply identified a binding arbitration agreement that governed disputes between Mahindra and Global Vehicles. In doing so, Mahindra did not submit to the Board's jurisdiction with respect to the dealers' protest.

We also reject the dealers' argument that "Mahindra's request for affirmative relief in its motion to strike the default judgment confer[red] jurisdiction on the Board and waive[d] any claim of improper service." The dealers assert that "Mahindra affirmatively sought to contest not service but the merits of the Protest" by "requesting 'an opportunity to contest the merits of the [Board's] Opinion.'" Because Mahindra's motion to strike again focused on the jurisdictional issue, we do not find that its request was sufficient to support a conclusion that Mahindra recognized the Board's jurisdiction and submitted itself to it. In all of its filings, Mahindra consistently maintained that the Board lacked jurisdiction due to insufficient service of process. Mahindra filed the motion to vacate "for the limited purpose" of requesting that the Board vacate its order because Mahindra was not properly served. Although Mahindra "request[ed] an opportunity to contest the merits" of the Board's order, it conditioned this request upon "the Board . . . decid[ing] service was proper." Here, as in Lyford, Mahindra never actually addressed the merits of the dealers' claims. Lyford, 97 N.H. at 169 (holding that defendant's assertion in its motion to vacate default judgment that it "'intends to defend said action'" "sought no determination of the merits" and therefore did not invoke court's jurisdiction). Consequently, we conclude that, as a matter of law, the character of Mahindra's request of the Board cannot be regarded as a waiver of its jurisdictional objection, and Mahindra's actions as a whole do not support a conclusion that it submitted itself to the Board's jurisdiction or that it waived its right to contest service of process. See Estate of Lunt, 150 N.H. at 97-98 (holding that motion to strike default judgment was based solely on defective service and did not waive objections to personal jurisdiction); Duncan v. McDonough, 105 N.H. 308, 310-11 (1964) (concluding that defendant did not waive his right to contest jurisdiction because all of his actions "pertained to the jurisdictional issue and were in pursuance thereof").

Finally, the dealers argue that, to the extent that Mahindra contests personal jurisdiction, it waived that issue by failing to include it in its motion to vacate the default judgment. Implicit in Mahindra's argument that it never received proper service is the argument that the Board never obtained personal jurisdiction over Mahindra because "[i]n order to obtain jurisdiction over an

out-of-state defendant, proper service of process is required." Impact Food Sales, 160 N.H. at 390.  Therefore, because Mahindra pursued its challenge to service of process throughout this litigation, we conclude that it did not waive its argument that the Board lacked personal jurisdiction to adjudicate the protest.

IV.  Conclusion

We hold that the trial court erred in finding that Mahindra waived its objection to service of process and submitted itself to the jurisdiction of the Board.  Consequently, because the Board never obtained personal jurisdiction over Mahindra, we need not reach Mahindra's argument that the trial court erred in finding that the Board had subject matter jurisdiction to adjudicate the dealers' claims.

Vacated and remanded.

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.

11