NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2015-0498


412 SOUTH BROADWAY REALTY, LLC & a.

v.

JOHN M. WOLTERS, JR. & a.

Argued: June 14, 2016
Opinion Issued: August 23, 2016


Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Michael J. Tierney on the brief and orally), for 392 South Broadway LLC.


Cleveland, Waters and Bass, P.A., of Concord (David W. Rayment and Mark S. Derby on the brief, and Mr. Rayment orally), for John M. Wolters, Jr. and Steven M. Lospennato.


Johnson & Borenstein, LLC, of Andover, Massachusetts (Mark B. Johnson and Kathleen M. Heyer on the brief, and Mr. Johnson orally), for Emmett Horgan, Trustee of the FUN Trust.


412 South Broadway Realty, LLC and Salem Rockingham, LLC filed no brief.

LYNN, J.  Defendants John M. Wolters, Jr. and Steven M. Lospennato (hereinafter "defendants") appeal multiple orders of the Superior Court (Wageling, J.) ruling that their property was not benefited by a deeded right-of-way over several other properties and finding them liable for abuse of process. The third-party defendant, Emmett Horgan, Trustee of the FUN Trust (FUN Trust), cross-appeals, arguing that the trial court erred in finding that the defendants had not committed slander of title and in calculating the damages award for the trust's abuse of process claim.  We affirm in part, vacate in part, and remand.

I

The trial court found, or the record supports, the following facts.  This case involves the defendants' alleged entitlement to travel across several properties in Salem in order to access Route 28.  The defendants own the property located at 16 Garabedian Drive, and claim to have a deeded right-of-way to travel from their property eastward, across State-owned railroad tracks and continuing across the southernmost section of two parcels of land owned by Cumberland Farms, Inc. and 392 South Broadway, LLC respectively.  The Cumberland Farms property abuts the railroad on its western boundary and 392 South Broadway's property to the southeast.  392 South Broadway's property is bounded on the north and west by the Cumberland Farms property and Route 28 on the east.  The travel way across these properties is known as Cuomo Drive.

This case was instituted, in 2009, by plaintiffs 412 South Broadway Realty, LLC and Salem Rockingham, LLC, which owned property located just to the south of Cuomo Drive, against the defendants and Cumberland Farms. 412 South Broadway, whose property abuts Cuomo Drive on its northern boundary, alleged that the defendants were crossing onto its property and unlawfully expanding the right-of-way located on Cumberland Farms's property.  412 South Broadway requested a declaratory judgment that the right-of-way did not run across its property and that the defendants had no property rights over its land.  Because the litigation involved the defendants' claim that they had the right to cross the State-owned railroad tracks and the property owned by 392 South Broadway, the trial court required that they both be joined as parties to the litigation.

The defendants filed several counterclaims against 412 South Broadway, alleging that, over its years of use, Cuomo Drive had expanded onto a small section of 412 South Broadway's property and that the defendants had acquired that portion through adverse possession or, alternatively, had acquired a prescriptive easement over it.  This disputed portion of 412 South Broadway's property became known throughout the case as the "cross-hatched area."

2

In 2011, 412 South Broadway sold its property to FUN Trust. FUN Trust later joined the litigation and asserted several claims against the defendants. Among other claims, FUN Trust alleged that the defendants had committed slander of title and abuse of process in connection with the appeal of a site plan approval that FUN Trust had received from the Town of Salem Planning Board in 2012.

Prior to trial, the State and Cumberland Farms settled the claims pending against them. As a result, the remaining property rights issues concerned the defendants' claims that: (1) they had adversely possessed, or gained prescriptive easement rights to, the cross-hatched area on FUN Trust's property; and (2) they had a deeded right-of-way over the property owned by 392 South Broadway. The parties agreed to present evidence with regard to these issues, and then, depending upon the outcome, FUN Trust would present evidence on its slander of title and abuse of process claims against the defendants at a later date.

Following a four-day bench trial, the trial court issued an order finding that the defendants had not demonstrated any property rights to the cross-hatched area. Specifically, the trial court stated that, due to a berm constructed along the northern boundary of FUN Trust's property line in the 1990s, the defendants "failed to demonstrate continuous use of the cross-hatched area for the prescriptive period." The trial court also found that "even if [the defendants] could demonstrate they have fulfilled the requisite time requirements for adverse possession, they have not shown a definitive right to the disputed area because their description of the area crossed lacks any specificity."

With regard to the defendants' claim of deeded easement rights over 392 South Broadway's property, the trial court found that no such right existed. The trial court determined that, in 1874, the original grantor, John A. Messer, sold a parcel of property on the east side of the railroad tracks, which included the land that eventually became the lot owned by 392 South Broadway, reserving as a right-of-way "whatever may be necessary in going to and from land of said Messer on the Westerly side of said Railroad." The trial court found that "at the time John A. [Messer] reserved that right of way for himself, the property he owned on the West . . . side of the rail road tracks [which included the defendants' property] was a life estate only." Thus, the court stated that John A. Messer "did not reserve for himself a perpetual right of way[;] [r]ather, he reserved a personal interest, or an easement in gross," which terminated when his interest in the life estate terminated.

Alternatively, the trial court ruled that, even assuming that the right-of-way passed with title to the property west of the railroad tracks, the right-of-way was later extinguished as to the defendants' property. The court cited a deed in the defendants' chain of title that did not mention the right-of-way in

3

1945, but found that the same grantor specifically did reference the right-of-way in deeds conveying two properties on the east side of the railroad tracks. The trial court found that that grantor "chose only to convey the benefit of the right of way to [the] properties on the East side of the railroad tracks" and that the defendants' property "did not obtain the disputed right of way." Given these rulings, the trial court directed the clerk to set a date for a bench trial regarding FUN Trust's remaining slander of title and abuse of process claims.

FUN Trust's remaining claims stemmed from the defendants' appeal of a 2012 Town of Salem Planning Board decision, which, over the defendants' objections, approved FUN Trust's site plan application. The defendants claimed that the planned redevelopment interfered with their rights to access Cuomo Drive and to cross over FUN Trust's property. The trial court heard evidence on these claims during a two-day bench trial. In its order, the court found that the defendants were not liable for slander of title because the statements that they had made were protected by judicial privilege.

However, the court found that the defendants were liable for abuse of process. It ruled that the defendants "failed to properly investigate their claim of adverse possession or prescriptive easement prior to the filing of the 2012 Appeal." It also found that the defendants made a nearly identical claim in a prior planning board appeal that was rejected, and that they pursued the 2012 appeal with the knowledge that the planning board did not have the authority to decide boundary disputes. Additionally, relying upon e-mails exchanged between the parties, the court found that the defendants had sought "borderline extortionate terms" in exchange for supporting FUN Trust's site plan application. The court ordered that the defendants pay FUN Trust's attorney's fees for the defense of the 2012 planning board appeal. This appeal followed.

II

On appeal, the defendants argue that the trial court erred: (1) in finding that they did not have a deeded right-of-way over 392 South Broadway's property; (2) in denying their motion to dismiss FUN Trust's claims for slander of title and abuse of process based upon res judicata and collateral estoppel; (3) in ruling in favor of FUN Trust on its abuse of process claim; and (4) in relying upon settlement communications between the parties as evidence of FUN Trust's abuse of process claim. We note that the defendants have not appealed the trial court's ruling that they do not have any property rights over the cross-hatched area located on FUN Trust's property.

In its cross-appeal, FUN Trust argues that the trial court erred: (1) in ruling that judicial privilege barred its claim against the defendants for slander of title; (2) by failing to award carrying costs, including property taxes, as damages in connection with its abuse of process claim; and (3) in denying its

4

request for attorney's fees in connection with this litigation.  We address each argument in turn.

A

The defendants argue that the trial court erred in finding that they did not have a deeded right-of-way across Cuomo Drive, which runs over 392 South Broadway's property.  The defendants do not appeal the trial court's ruling that the original easement reservation made by John A. Messer, who owned only a life estate in the dominant estate, would have terminated when the life estate ended.  Rather, they argue that "even if there was a life estate issue with the original easement grant, subsequent predecessors in title to 392 South Broadway specifically subjected what would become [its] property, to the easement or right-of-way."  They argue that "[t]he subsequent owners of the dominant and servient estates specifically intended to ratify, re-grant, re-accept and otherwise correct any defects in Mr. Messer's original reservation and grant."  392 South Broadway argues that this argument is not properly before us because it was not "made before or during trial or directly considered by the Superior Court in any written or oral decision."  We agree with 392 South Broadway.

In their counterclaim, the defendants alleged only that their property "benefit[s] from a right of way . . . originally established by deed dated December 2, 1874," which is the deed from John A. Messer.  They did not allege that, if the Messer deed failed to establish a perpetual right-of-way, subsequent deeds in 392 South Broadway's chain of title created the right-of-way independently of the Messer conveyance or that actions of subsequent purchasers provide a basis for ratification of, or otherwise correct defects in, the Messer deed.  According to the defendants' own brief, this issue appears to have been first raised in its requests for rulings of law submitted at the end of the bench trial regarding the right-of-way.  However, raising new allegations at such a late juncture conflicts with the purpose of notice pleading.  See Perron v. Aranosian, 128 N.H. 92, 95 (1986) (finding that alternative relief first raised in requests for rulings of law "offended the elementary principle that must be enforced, even in this lenient jurisdiction, that pleadings must inform the opponent of the theory and relief sought" (quotation and ellipsis omitted)); see also Thompson v. C&C Research & Dev., 153 N.H. 446, 451-52 (2006).

Furthermore, in its order, the trial court did not address the argument made by the defendants regarding subsequent conveyances.  This is consistent with its earlier denial of the defendants' request to amend its cross-complaint in order to broaden the scope of the litigation.  The trial court specifically struck any allegations beyond those originally pleaded in the cross-complaint.  We note that the defendants have not appealed this decision.  Accordingly, we decline to address the defendants' claim that subsequent conveyances were

5

sufficient to recreate or correct defects in the original reservation of the easement.

The defendants also argue that 392 South Broadway should be judicially estopped from denying the existence of a deeded right-of-way over its property. Specifically, they argue that Edward Gordon, a principal of both 392 South Broadway and 412 South Broadway, admitted to the existence of the deeded right-of-way in a filing by 412 South Broadway. 392 South Broadway argues that the defendants failed to preserve this argument because the trial court did not address the argument in its order, and the defendants did not move for reconsideration or clarification of this issue. See State v. Farnsworth, 126 N.H. 656, 660 (1985). The defendants respond that they are "not necessarily appealing the Trial Court's failure to make findings on judicial estoppel, [they are] appealing the Trial Court's implied denial and rejection of the arguments." Assuming without deciding that the issue is properly before us, we cannot say that the trial court erred, as a matter of law, by not applying judicial estoppel.

In determining whether to apply the doctrine of judicial estoppel, a court considers, among other things, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Cohoon v. IDM Software, 153 N.H. 1, 4 (2005) (quotation omitted). Even assuming that Gordon's statements were from the same "party" — despite being representations made on behalf of a completely separate entity — the defendants have failed to persuade us that 392 South Broadway derived an unfair advantage, or the defendants suffered an unfair detriment, by 392 South Broadway not being precluded from denying the existence of the right-of-way.

In 2010, Cumberland Farms maintained that the defendants had no deeded right-of-way over its property. Additionally, contrary to the defendants' claim that Gordon made "an eleventh-hour challenge" to the validity of the right-of-way, 392 South Broadway denied that the defendants had a deeded right-of-way over its property when it was first brought into the case. The defendants' claim of deeded access across both Cumberland Farms and 392 South Broadway's properties arose from the same reservation by John A. Messer in 1874. Therefore, the defendants knew as far back as 2010, two years before 392 South Broadway became a party to this lawsuit, that they would be required to prove the existence of the deeded right-of-way. As such, the defendants were not prejudiced in any way, and 392 South Broadway gained no unfair advantage in connection with Gordon's statements.

The defendants also advance numerous other theories of estoppel that do not appear to have been addressed by the trial court. For instance, they argue that the facts of this case "constitute[] an estoppel by deed and/or an estoppel by records and/or estoppel by recitals in instruments." Additionally, without citing any legal authority, the defendants allege that 392 South Broadway is

6

estopped from denying the defendants' right-of-way due to the site plan applications filed by prior owners and because of the allegedly odd shape of the building on the property. Finally, they also argue that equitable estoppel applies to prevent 392 South Broadway from denying the validity of the right-of-way. However, because the defendants provide little legal analysis regarding these theories, we decline to address them. Cf. Porter v. City of Manchester, 155 N.H. 149, 157 (2007) (declining to review a party's argument where it failed to "undertake a collateral estoppel analysis, or to develop its legal argument"); see also State v. Fernandez, 152 N.H. 233, 239-40 (2005) ("[A] mere laundry list of complaints, without developed legal argument, is insufficient to warrant judicial review.").

B

Next, the defendants argue that the trial court erred by failing to grant their motion to dismiss FUN Trust's abuse of process claim and by ruling against them on the merits of this claim. They argue that, under the doctrines of res judicata and/or collateral estoppel, FUN Trust's unsuccessful requests for attorney's fees, in both the trial court and this court, in connection with the 2012 planning board appeal, bars them from seeking redress for abuse of process. FUN Trust argues that the trial court did not err by denying the defendants' motion to dismiss, and that the prior attorney's fee requests are not controlling of the outcome of its abuse of process claim. Insofar as FUN Trust argues that the defendants did not properly raise res judicata and collateral estoppel in the trial court, we note that the trial court addressed the merits of both doctrines, and FUN Trust has not filed a cross-appeal asserting that it was error for the trial court to do so. Therefore, we conclude that the issue is properly before us.

"To determine whether the doctrine of claim preclusion, otherwise known as res judicata, applies here, we employ the familiar three-part test." Merriam Farm, Inc. v. Town of Surry, 168 N.H. 197, 199 (2015). The doctrine prevents parties from relitigating matters actually litigated and matters that could have been litigated in the first action, if three elements are met: "(1) the parties are the same or in privity with one another; (2) the same cause of action was before the court in both instances; and (3) the first action ended with a final judgment on the merits." Id. (quotation omitted). "The applicability of res judicata is a question of law, which we review de novo." Id. (quotation omitted).

The parties here disagree as to whether FUN Trust's abuse of process claim constitutes the same "cause of action" as the underlying planning board appeal. "The term 'cause of action' is defined as the right to recover, regardless of the theory of recovery." Id. "Generally, in determining whether two actions are the same cause of action for the purpose of applying res judicata, we consider whether the alleged causes of action arise out of the same transaction or occurrence." Id. at 199-200 (quotation omitted).

7

In this case, we agree with FUN Trust that its abuse of process claim is not part of the same cause of action because it does not arise out of the same transaction or occurrence as the underlying planning board appeal. That appeal concerned the adequacy of FUN Trust's site plan application to the planning board. In contrast, FUN Trust's abuse of process claim concerns the defendants' conduct and motivation in appealing the planning board's decision. We note that other jurisdictions have held that generally an abuse of process claim does not arise out of the same transaction or occurrence as the underlying claim. See Yaklevich v. Kemp, Schaeffer, 626 N.E.2d 115, 119 (Ohio 1994); Hewes v. Wolfe, 330 S.E.2d 16, 22 (N.C. Ct. App. 1985); Reitz v. Dieter, 840 F. Supp. 353, 355-56 (E.D. Pa. 1993). But see Pochiro v. Prudential Ins. Co. of America, 827 F.2d 1246, 1252-53 (9th Cir. 1987). We agree and are not persuaded that the trial court erred when it determined that res judicata did not bar FUN Trust's abuse of process claim.

Next, collateral estoppel, also known as issue preclusion, "bars a party to a prior action, or a person in privity with such party, from relitigating any issue or fact actually litigated and determined in the prior action." Mahindra & Mahindra v. Holloway Motor Cars of Manchester, 166 N.H. 740, 750 (2014). It may preclude the relitigation of findings made by a previous court when: "(1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment." Id. (quotation omitted). "The applicability of collateral estoppel is a question of law that we review de novo." Petition of Kalar, 162 N.H. 314, 321 (2011).

Assuming without deciding that the issues presented are identical, given the ancillary nature of a request for attorney's fees, see In the Matter of Hampers & Hampers, 166 N.H. 422, 430 (2014), we cannot conclude that FUN Trust had "a full and fair opportunity to litigate the issue" surrounding the defendants' objectives in filing the 2012 planning board appeal so as to justify the application of collateral estoppel. Mahindra, 166 N.H. at 750 (quotation omitted). A request for attorney's fees "is limited in nature," and "[d]iscovery as to what a plaintiff's motivation was in bringing suit is not generally part of the process." A.H.D.C. v. City of Fresno, No. CIV-F-97-5498 OWW, 2004 WL 5866234, at *15 (E.D. Cal. Oct. 1, 2004) ("The parties have not had a chance to fully explore and argue the subject."). Therefore, we conclude that the trial court did not err when it found that FUN Trust's abuse of process claim was not barred by collateral estoppel.

C

The defendants also argue that, in contravention of New Hampshire Rule of Evidence 408, the trial court erred by relying upon settlement

communications between the parties as evidence of their motivation in bringing the 2012 planning board appeal.  FUN Trust argues that the trial court did not err in considering the communications because the demands were used, not to establish liability, but to prove the defendants' state of mind.

In its order, the trial court cited an e-mail from Wolters to Horgan, whereby, in exchange for the defendants dropping their claims in this case and supporting FUN Trust's 2012 site plan application, Wolters wanted a deeded easement over the cross-hatched area and a future easement over the adjacent property should Horgan come to own it.  He also wanted Horgan to persuade Gordon to transfer the 392 South Broadway property to the defendants for no consideration.  The trial court admitted the communication as evidence of the defendants' motivation in bringing the planning board appeal.  The trial court found Wolters's proposal to involve "borderline extortionate terms," and used the communication as evidence when it found in favor of FUN Trust on its claim that the defendants had committed abuse of process by pursuing the 2012 planning board appeal.

"We review a trial court's decisions on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard."  Kukesh v. Mutrie, 168 N.H. 76, 80 (2015) (quotation omitted).  "We will not disturb the trial court's order absent an unsustainable exercise of discretion."  Id. (quotation omitted).

New Hampshire Rule of Evidence 408 provides, in relevant part:

[E]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

. . . .

This rule does not require exclusion when the evidence is offered for a purpose other than the proof of liability for or invalidity of the claim or its amount, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

N.H. R. Ev. 408.  The Rule "states the basic proposition that evidence of compromise offers[,] compromise agreements, and conduct or statements made in compromise negotiations is inadmissible on questions of liability and damages."  Id. Reporter's Notes.

Under the similar Federal Rule of Evidence 408, some courts have held that "abuse of process claims are sufficiently related to the [underlying litigation] as to require the inadmissibility of settlement evidence from that suit." Ciolli v. Iravani, 625 F. Supp. 2d 276, 287-88 (E.D. Pa. 2009); see also Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 674 (2013) (noting that our Rule 408 is similar to the federal rule). Further, we agree that "[p]art of an effective settlement process is a frank discussion of the relative merits of each party's case." Ciolli, 625 F. Supp. 2d at 288. "If parties were permitted to take the content of these negotiations and use them in subsequent litigation for . . . abuse of process, then counsel would put themselves and their clients at risk of suit in every settlement conference in which they participate, resulting in either less effective or even non-existent negotiations." Id. "This is precisely the situation that [Rule] 408 is designed to avoid." Id. Thus, the use of such evidence undermines the purpose of the rule.

This is not to say that any "party [could] easily insulate itself from an abuse of process claim by labeling as settlement discussions its purportedly improper and possibly illegal demands." BTG Int'l Inc. v. Bioactive Labs., No. 15-04885, 2016 WL 3519712, at *10 (E.D. Pa. June 28, 2016). However, under the facts of this case, involving complex litigation with multiple parties and claims, we believe that the admission of the settlement offer violated the spirit and purpose of Rule 408 and that it should have been excluded as evidence of liability for abuse of process. See Axenics, 164 N.H. at 674-75 (holding that the spirit of Rule 408 supported the exclusion of internal memoranda concerning settlement contributions). Therefore, we conclude that the trial court erred in considering this evidence.

We are not persuaded by FUN Trust's suggestion that Rule 408 is inapplicable because it was not a party when the demands were sent, because Rule 408 includes situations in which negotiations occur before a lawsuit is filed. See N.H. R. Ev. 408 (excluding evidence of a "covenant not to sue"). FUN Trust also argues that the settlement offer was not made in good faith, but that argument is essentially a claim that the defendants had an ulterior purpose, which goes to the merits of its abuse of process claim and not admissibility under Rule 408. See id. Given our conclusion that this evidence was erroneously admitted, and the fact that we are unable to determine whether, in the absence of this evidence, the trial court nonetheless would have concluded that the defendants had committed abuse of process, we vacate the abuse of process judgment and remand to the trial court for its consideration of this issue.

D

Because, on remand, the trial court may still find that the defendants are liable for abuse of process, in the interest of judicial economy, we will briefly address FUN Trust's cross-appeal that the trial court erred by not awarding it

damages for payment of carrying costs, including property taxes, allegedly incurred as a result of the delay caused by the 2012 planning board appeal. See Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 847 (2005). We will not overturn the trial court's order regarding damages unless we find it to be clearly erroneous. T&M Assocs. v. Goodrich, 150 N.H. 161, 164 (2003). The amount of damages to be awarded in a particular case is essentially a question of fact. Jackson v. Morse, 152 N.H. 48, 51 (2005).

The trial court stated that it would not award FUN Trust taxes paid because it "presumably had to pay these taxes even if the 2012 Appeal had not occurred" and that it would not award other expenses because, to the extent that FUN Trust "seeks to use the property taxes as an approximation of lost profits" during delay caused by appeal, FUN Trust "ha[d] not met its burden in demonstrating that the property taxes are [a] sufficiently related measure of damages to that loss."

FUN Trust agrees that it would have had to pay property taxes regardless of the defendants' actions, but argues that, if the defendants had not appealed, it would have completed construction of its business earlier and made money to offset the carrying costs. However, FUN Trust fails to explain how or why the trial court erred in determining that property taxes or other carrying costs for the property during the period of the planning board appeal were not an adequate "proxy" for lost profits during the same period. Therefore, we are not persuaded that the trial court's exclusion of these amounts from its damages award was clearly erroneous.

E

Next, in its cross-appeal, FUN Trust argues that the trial court erred when it found that the defendants were not liable for slander of title for statements made in conjunction with a 2012 planning board decision. The trial court found that the defendants' statements made "in connection with the 2012 [planning board] Appeal [were] absolutely privileged from a claim of slander to title" due to judicial privilege. FUN Trust concedes that the trial court "correctly determined that statements made by [the defendants] in the judicial context were absolutely privileged." However, it argues that the trial court erred because the court "did not address the statements made by [the defendants] in the context of the Planning Board hearings, which statements also were slanderous to FUN's title." The defendants counter that FUN Trust never asserted that its claim of slander of title was based upon statements made before the planning board. We agree with the defendants.

As quoted by the trial court, the only allegation FUN Trust made in its counterclaim about false statements made by the defendants was that "[i]n connection with their appeal of the 2012 Planning Board Decision, [the

defendants] willfully published false statements concerning the title of FUN Trust's property." (Emphasis added.) FUN Trust did not allege that the defendants made false statements before the planning board. In fact, even in its request for rulings of law on this issue, FUN Trust stated that the defendants "claimed title to the cross-hatched area of the FUN Trust Property in the 2012 Appeal and in the Easement Litigation" but does not mention the planning board proceedings. (Emphasis added.) Additionally, it does not appear from the record before us that FUN Trust ever brought this alleged oversight to the trial court's attention. See Thompson v. D'Errico, 163 N.H. 20, 22 (2011) ("[I]t is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial."). Thus, we are not persuaded that the trial court erred by failing to address this argument. Given this conclusion, we need not address the defendants' argument that the trial court erred in failing to grant their motion to dismiss FUN Trust's slander of title claim.

F

Finally, FUN Trust argues that the trial court erred "when it determined that [the defendants] did not bring this action against [it] wantonly, maliciously, oppressively, or in bad faith, and also erred in declining to award [its] request for attorneys' fees based on the erroneous finding." "Under the bad faith litigation theory, an award of attorney's fees is appropriate where one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action." Frost v. Comm'r, N.H. Banking Dep't, 163 N.H. 365, 378 (2012) (quotation omitted). "We give substantial deference to a trial court's decision on attorney's fees, and will not overturn it absent an unsustainable exercise of discretion." Bosonetto v. Town of Richmond, 163 N.H. 736, 746 (2012) (quotation omitted).

The trial court stated that it "declines to award attorney's fees associated with this case . . . as it finds that in bringing their cross claims, [the defendants] did not act wantonly, maliciously, oppressively, or in bad faith." This finding is supported by the record. In its order, the trial court recounted the testimony of witnesses that Cuomo Drive was once a "sea of pavement" and "wider in the 1980s and 1990s than it is today," and referenced photographs submitted to the court demonstrating these facts. Given this evidence, the trial court could readily have found that, prior to litigation, it was unclear whether the defendants had gained rights to the cross-hatched area through years of continuous use. Therefore, we are not persuaded that the trial court unsustainably exercised its discretion when it found that FUN Trust was not entitled to attorney's fees.

## III

For the foregoing reasons, we vacate the trial court's judgment on FUN Trust's abuse of process claim and remand to the trial court for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

<u>Affirmed in part; vacated in part; and remanded</u>.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.